UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Walters, Jr.,
      Plaintiff,

      v.                                                        Civil Action No. 1:09-CV-84

Robert Hofmann, Fred Figueroa,
Randall Stovall, Corrections Corporation
of America, John Ferguson, Vermont
Department of Corrections, Randy
Vadari, Captain Gooch, John Goedert,
Dr. Warren,
      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 16 and 25)

*Pro se* plaintiff James Walters, Jr., formerly a Vermont inmate, brings this action claiming that he was provided inadequate medical care while incarcerated in Oklahoma. Pending before the Court are motions to dismiss filed by Vermont defendants Robert Hofmann and the Vermont Department of Corrections (Doc. 16), and by out-of-state defendants Ferguson, Stovall, Figueroa, Warren and Corrections Corporation of America (Doc. 25). The motions are unopposed. For the reasons set forth below, I recommend that the defendants' motions to dismiss be GRANTED in part, that some defendants be dismissed, and that the remainder of the case be transferred to the proper forum.

## Factual Background

For the limited purpose of ruling on the motions to dismiss, the Court will accept the allegations in the complaint as true.

On September 1, 2007, while incarcerated at the North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma, Walters suffered an injury at the hands of a fellow inmate. NFCF is a private prison owned and operated by Corrections Corporation of America ("CCA"), and houses Vermont inmates by virtue of a contract between CCA and the Vermont Department of Corrections ("DOC"). Walters claims that his injury was not treated properly, and he brings this action against the DOC, then-Commissioner Robert Hofmann, CCA President John Ferguson and other CCA employees.

Walters alleges that he reported his injury immediately. He was subsequently escorted to the medical wing and examined by nurse practitioner John Goedert. During the examination, Goedert allegedly placed his hands on either side of Walters' face and stated, "'I see what I need to know.'" (Doc. 4 at 7.) According to the complaint, Goedert's written assessment was "1. Left jaw contusion. And 2. Loose right lower teeth," and for a treatment plan he allegedly recommended "1. [S]chedule x-rays of jaw due to injury. And 2. To give the petitioner IBU." *Id.*

Walters claims that he made clear to Goedert and others "in the immediate vicinity" that he was in "excruciating pain." He reports that he could tell that his jaw was broken, and "stated he needed to go to the hospital and also needed pain medication." Despite Walters's alleged efforts to alert medical staff to the extent of his injury and his discomfort, was not taken to the hospital, was not provided pain medication, and was instead given three "IBU" and returned to his unit. *Id.*

Upon returning to his unit, Walters filed a medical slip informing the medical

2

department that he believed his jaw was broken and that he was unable to eat or sleep. Three days passed with no medical attention, at which point Walters asked the officer on duty to call the medical department to inquire as to why he had not been seen, and about whether he could have a soft food diet.

On September 4, 2007, Walters was attended to by Dr. Warren. He allegedly told Dr. Warren and other medical staff that he was in pain, but again was not offered any pain medication. Unit manager Randy Vadari and Captain Gooch met with Walters while he was at the medical department, and asked him to fill out a report about the September 1st incident. After doing so, Walters was "promptly led off to segregation without any medical care." *Id.* at 8.

Once in segregation, Walters tried for two days to obtain a sick call request but was told by staff that none were available and that he must be patient. When he asked to see the warden, he was told that the warden was busy and that slips would be arriving soon. He was also told that the medical department was aware of his condition and "'will get here when they get here.'" *Id.* He further alleges that he overheard unit officers saying how "all Vermonters were nothing but blat Asses and how they wished they would just go home." *Id.*

On September 6, 2007, Walters obtained and submitted a medical slip. The next day, he received a written response stating that he had "current medication ordered by your provider on 9/04/07." *Id.* at 9. Walters claims that he had not received any such medication, and did not know "what they were talking about." *Id.*

3

Walters remained in segregation from September 4 though September 13, 2007. On September 15, 2007, he was transferred to a CCA facility in Kentucky. Walters claims that his transfer was an effort by NFCF personnel to escape responsibility for his injury and medical care.

When he arrived in Kentucky, Walters informed intake personnel that his jaw was broken and that he had not received adequate medical care. He was again placed in segregation, but was able to submit a sick call slip and was seen by medical staff "the following Monday." *Id.* at 12. A nurse practitioner recommended that Walters get an x-ray and see an oral surgeon, whereupon he was sent to an outside clinic "on or about the 27th of September." X-rays were taken, and medical staff confirmed that his jaw had been broken.

On November 30, 2007, Walters met with an oral surgeon. "The oral surgeon told the petitioner that his jaw was broken below the bottom teeth in the front of his face, and was also broken on the left mandible, he further advised the plaintiff that his jaw on the left side had still not healed and was floating, the plaintiff would need surgery to put a plate in the left side of his jaw." *Id.* at 13. The surgeon also reportedly told Walters that he should have had surgery immediately, and that there should not have been any delay in delivering medical attention.

In addition to his claim against NFCF personnel, Walters claims that his medical care in Kentucky was lacking. Writing in the present tense, Walters alleges that "petitioner has been in CCA/Lee [A]djustment Center in Beattyville[,] Kentucky for

4

about three months, other then [sic] getting X-rays of the fractured jaw CCA/Lee Adjustment [C]enter has followed the lead of [NFCF] in not providing meaningful medical attention to its inmates." *Id.*

Walters claims that his treatment while in prison violated his rights under the Eighth and Fourteenth Amendments. For relief, he seeks declarations of unconstitutional conduct, injunctive relief and damages. He currently lives in Burlington, Vermont.

## Discussion

Although not all defendants have been served, those who have been served in at least their official capacities have moved to dismiss. Specifically, there are two motions before the Court, asserting defenses that include Eleventh Amendment immunity, lack of personal involvement, and improper venue. The Court will address each motion in turn.

I. **Eleventh Amendment Immunity**

The first motion to dismiss is submitted by the Vermont DOC and former Commissioner Robert Hofmann. These defendants argue that all claims against the DOC, and all damages claims brought against Hofmann in his official capacity, are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment.

*Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Therefore, any federal constitutional claims for damages brought against Hofmann in his official capacity should be DISMISSED. Because the Eleventh Amendment protects the State of Vermont regardless of the nature of the relief sought, *all* claims against the DOC, a state agency, should be DISMISSED. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

## II. Prospective Injunctive Relief

Courts have long held that the Eleventh Amendment does not prohibit a suit against a state official in his official capacity when the suit seeks prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287-88 (2d Cir. 2003). Under *Ex Parte Young*, there is "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003) (quoting *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)).

Notwithstanding the *Ex Parte Young* exception to Eleventh Amendment immunity, the defendants argue that meaningful injunctive relief cannot be granted because Walters

is no longer in prison. Indeed, "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *Young v. Coughlin*, 866 F.2d 567, 568, n. 1 (2d Cir. 1989). The issue can be framed as one of standing, as the Second Circuit has explained that "[i]n order to meet the constitutional minimum of standing to seek injunctive relief, [plaintiff] must carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citations and quotations omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). In other words, Walters may not "rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215.

The complaint prays for a permanent injunction barring the defendants "from causing the plaintiff any more harm by delaying or interfering in any prescribed course of examination or treatment ordered by a licensed physician for the plaintiff's injuries, and further to arrange for any and all previously ordered examinations or course(s) of treatment." (Doc. 4 at 16.) Because Walters is no longer incarcerated, there is no reason to expect that he will need medical attention from CCA or the DOC in the future, or that any defendant will have control over Walters' access to medical care. *See Murphy v.*

7

*Hunt*, 455 U.S. 478, 482 (1982) (exception to mootness doctrine where action is "capable of repetition, yet evading review"). His claims for injunctive relief are, therefore, moot, and should be DISMISSED.

## III. Declaratory Relief

To the extent that Walters is seeking any sort of declaratory relief, those claims are barred as well. "[T]he Supreme Court has held that the Eleventh Amendment and the principles governing the issuance of declaratory judgment prohibit the award of a declaration that state officials' prior conduct violated federal law." *Rothenberg v. Stone*, 234 F. Supp. 2d 217, 221 (E.D.N.Y. 2002) (citing *Green v. Mansour*, 474 U.S. 64, 65-66 (1985)). More fundamentally, and as was the case with the request for prospective injunctive relief, a plaintiff seeking declaratory relief cannot rely on past injury in order to have standing. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)). Because Walters is claiming purely past injuries, his claims for declaratory relief should be DISMISSED. *See Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir.1975) (where "the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed").

## IV. Hofmann's Personal Involvement

With respect to Walters' claims against former Commissioner Hofmann in his individual capacity, there are only general allegations that Hofmann had a duty to ensure proper medical care and treatment. There is no suggestion in the complaint that Hofmann

played any direct role in Walters' care, and no specific claim that he had notice of Walters' situation.

It is clear from the complaint that Hofmann is being sued solely because he had supervisory responsibilities as Commissioner. The Second Circuit has established that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on respondeat superior.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.' *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

9

official's own individual actions, has violated the Constitution.").

Walters' complaint does not plead any of these prerequisites for supervisor liability. Specifically, as noted above, there are no allegations of direct participation, and no specific indication that Hofmann was aware of Walters' medical situation, his placement in segregation, or the alleged reasons for his transfer from Oklahoma to Kentucky. Nor does Walters allege that Hofmann was responsible for a policy or custom that led to wrongdoing, or that he may be held liable for failing to properly supervise CCA employees who committed allegedly wrongful acts.

The complaint does make one general allegation of notice, claiming that Walters contacted "each and every defendant seeking help." (Doc. 4 at 15.) Walters offers no specific support for this allegation, and even assuming that he sent a letter or other form of notification to Commissioner Hofmann, such notification would not be enough render the Commissioner liable under § 1983. *See, e.g., Applegate v. Annucci*, 2008 WL 2725087, at *18 (N.D.N.Y. July 10, 2008); *Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); *Greenwald v. Coughlin*, 1995 WL 232736, at *8 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations") (citations omitted). The Court should therefore find that Walters has failed to state an individual capacity claim against Commissioner Hofmann, and GRANT the motion to dismiss (Paper 16) in its entirety.

## V.     State Law Claims Against Hofmann

In addition to federal claims, the complaint alleges gross negligence and other tort violations. The Vermont Supreme Court has held that "the state's highest executive officers," such as the Commissioner of the DOC, are absolutely immune from such claims "when they are acting within their respective authorities." *LaShay v. Dep't of Soc. And Rehabilitation Servs.*, 160 Vt. 60, 64 (1993); *see Curran v. Marcille*, 52 Vt. 247, 249 (1989) (DOC Commissioner is "among the state's highest executive officers"). Because Walters does not allege that Commissioner Hofmann acted beyond his authority in any respect, absolute immunity applies.

Furthermore, Vermont law dictates that an action brought against a state employee acting within the scope of his employment must be brought against the State itself. 12 V.S.A. § 5602. Although this provision does not apply to claims of gross neligence or willful misconduct, and Walters' complaint contains such allegations, there are no facts to support such claims. *See Curley v. AMR Corp*, 153 F.3d 5, 13 (2d Cir. 1998) (quoting *AT & T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir.1996) (stating that gross negligence is conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing"); *Kane v. Lamothe*, 182 Vt. 241, 248 (2007) (gross negligence is a "heedless and palpable violation of legal duty") (citation omitted). With only general allegations against the Commissioner, and conclusory assertions that all defendants are liable gross negligence, the complaint is legally insufficient. *See, e.g., Liner v. Goord*, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008). The state law claims brought against

Hofmann should, therefore, be DISMISSED.

## VI. CCA Defendants' Personal Involvement

Several CCA defendants – NFCF Warden Fred Figueroa, Kentucky Warden Randall Stovall, CCA President John Ferguson, and Dr. Warren – have been served in their official capacities, along with CCA itself (collectively "CCA defendants"), and now move to dismiss. Their motion presents three arguments. First, defendants Ferguson, Stovall and Figueroa claim that Walters has failed to allege their personal involvement in any wrongdoing. Second, and like the Vermont defendants, they argue that Walters lacks standing to bring claims for injunctive and declaratory relief. Third, defendants CCA, Warren and Figueroa seek dismissal on the basis of improper venue. The Court will first consider the personal involvement argument.

The complaint does not assert any direct involvement by defendants Figueroa, Stovall or Ferguson. Indeed, as prison wardens and the CCA President, respectively, these defendants are being sued solely because of their positions as supervisors. Once again, however, Walters has not alleged sufficient facts to support claims of supervisory liability. Aside from the bald allegation of having "contacted each and every defendant seeking help," there is no claim that these defendants had notice of Walters' alleged mistreatment. (Doc. 4 at 15.) And as with Commissioner Hofmann, even this sort of general allegation of notice would be insufficient to hold a high-level supervisor liable under § 1983. *See, e.g., Greenwald*, 1995 WL 232736, at *8 ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an

investigation of allegations made therein is insufficient to hold that official liable for the alleged violations")

Walters does not claim that the facilities in either Oklahoma or Kentucky had policies or customs that sanctioned his treatment, or that these defendants allowed any such policies to continue. Nor does he allege facts to support a claim of gross negligence. *See generally Richardson,* 347 F.3d at 435. Accordingly, I recommend that all claims against defendants Ferguson, Stovall and Figueroa be DISMISSED for failure to allege sufficient personal involvement.

## VII. Injunctive And Declaratory Relief

The fact that Walters is no longer incarcerated renders moot any claims against the CCA defendants for injunctive and declaratory relief, as discussed in Sections II and III above.

## VIII. Venue

The final argument presented by the CCA defendants is that venue is improper with respect to CCA, Dr. Warren and Warden Figueroa. When a case is commenced in an improper venue, Section 1406(a) requires the Court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." *Indymac Mortgage*

13

*Holdings, Inc. v. Reyad*, 167 F. Supp.2d 222, 237 (D. Conn. 2001).

In cases involving questions of federal law, such as Walters' civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); *see also Amaker v. Haponik*, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). Walters also claims diversity jurisdiction, for which the controlling statute is 28 U.S.C. § 1391(a). Section 1391(a) provides that venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Subsection (1) of either § 1391(a) or § 1391(b) does not apply here, since the defendants do not all reside in the same district:. The primary actors in the case reside in Oklahoma, CCA is headquartered in Tennessee, Warden Stovall is in Kentucky, and the DOC and Commissioner Hofmann reside in Vermont.

The next subsection determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2),

14

(b)(2). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005). In this case, the principal events took place at the correctional facility in Oklahoma. Walter's makes one allegation of generally poor medical treatment in Kentucky, but the injury and most of the allegedly faulty treatment occurred at NFCF in Sayre, Oklahoma. Accordingly, venue is most appropriate in that state under subsection (2). *See Lee v. Corrections Corp. of America*, 2007 WL 4225405, at *2-*3 (D. Haw. Nov. 26, 2007); *Basargin v. Corrections Corp. of America*, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); *Sadler v. Rowland*, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia). Because this action could have been brought in Oklahoma, subsection (3) of both §§ 1391(a) and (b) is inapplicable. *See* Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp.2003) (citing *F.S. Photo, Inc. v. Picturevision*, Inc., 48 F.Supp.2d 442, 448 (D.Del.1999)).

Having determined that venue is most appropriate in Oklahoma, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer. 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted). In making this determination, consideration should be given to the ultimate goal of the "expeditious and

orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heinman*, 369 U.S. 463, 466-67 (1962). That said, the most common practice under § 1406 is to transfer "to a proper forum rather than to dismiss the litigation. The reasons for doing so are especially compelling if the statute of limitations has run since the commencement of the action, so that dismissal might prevent" refiling. Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3827 (2007) (citing, *inter alia*, *Minette*, 997 F.2d at 1026-27); *see also Daniel*, 428 F.3d at 435 (expiration of statute of limitations is "compelling reason" for transfer).

Relevant to this case, the Oklahoma statute of limitation for both § 1983 claims and personal injury actions is two years. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988); Okla. Stat. tit. 12, § 95(A)(3). Walters' allegations center on events that took place between September and November of 2007. He filed his complaint in April 2009, well within the limitations period, but dismissing the case without prejudice and forcing him to re-file in Oklahoma would render any subsequent case untimely. Furthermore, to dismiss the case and require re-filing would result in unnecessary duplication of effort on the part of the defendants, additional effort for the plaintiff, and unnecessary delay for all parties. Accordingly, I recommend that, in the interests of justice, this case be TRANSFERRED to the Western District of Oklahoma.

## Conclusion

For the reasons set forth above, I recommend that the motion to dismiss filed by Defendants Hofmann and the Department of Corrections (Doc. 16) be GRANTED, and

that all claims against those defendants be DISMISSED. I also recommend that the motion to dismiss filed by the CCA defendants (Doc. 25) be GRANTED to the extent that all claims against defendants Ferguson, Stovall and Figueroa should be DISMISSED. The CCA defendants' motion regarding improper venue (Doc. 25) should be GRANTED insofar as transfer of the case is appropriate. Because venue in Vermont is improper, I recommend that the remainder of the case be TRANSFERRED to the United States District Court for the Western District of Oklahoma.

Dated at Burlington, in the District of Vermont, this 29th day of December, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).